PERE MARQUETTE RY. CO. v. CHICAGO & E. I. R. CO. et al.

(Circuit Court of Appeals, Seventh Circuit. December 10, 1918.)

No. 2642.

INDEMNITY ⬥13(1)—IMPLIED CONTRACT—CONNECTING CARRIER—WRONGFUL DELIVERY OF GOODS.

Where official classification provided for two standard forms of bills of lading to be issued, one "Straight Bill of Lading," which was not required to be surrendered before delivery of goods, the other "Order Bill of Lading," containing the provision "Consigned to order of ———," and required to be surrendered before delivery, a waybill issued by an initial carrier stating the consignee to be "order of" a person named, although other than the shipper, *held* sufficient to advise a connecting carrier that an order bill of lading was outstanding and to render it liable to initial carrier against which judgment had been rendered for delivery without surrender of the bill.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Claim of the Pere Marquette Railway Company against the Chicago & Eastern Illinois Railroad Company and Thomas D. Heed, its receiver. From a decree disallowing its claim, petitioner appeals. Reversed.

F. Harold Schmitt, of Chicago, Ill., for appellant.

Homer T. Dick, of Chicago, Ill., for appellees.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

---

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ALSCHULER, Circuit Judge. This appeal involves the right of appellant, the initial carrier, to recover from appellee, the connecting and delivering carrier, for alleged wrongful delivery by appellee of two shipments of beans consigned by the respective shippers in Michigan to "order of A. J. Thompson & Co., Evansville, Ind.," as recited in the bills of lading which appellant issued to the shippers. Upon the written order of the consignee, appellee delivered the shipments without requiring surrender of the bills of lading, whereby loss accrued to the shippers, and suits were brought in the state court of Michigan which resulted in judgments in favor of the shippers against appellant; the right of recovery having been sustained by the Supreme Court of Michigan, in Thomas et al. v. Blair et al., Receivers Pere Marquette R. R. Co., 185 Mich. 422, 151 N. W. 1041.

The action was by appellant to recover from the delivering carrier the loss which the initial carrier thus sustained. There is no question here of the right of recovery against the initial carrier. The only bar urged against recovery by appellant is that the initial carrier negligently failed to notify the connecting carrier that the bills of lading were of the kind that required surrender before delivery of the shipments. The special master, to whom the petition against the appellee receiver was referred, found that the initial carrier negligently failed to inform appellee that the bills of lading were such as required surrender before delivery, and he reported against appellant's right of recovery. In this, the District Court concurred, and decreed against appellant, dismissing the petition.

The official classification in force at the time of these transactions made provision for two standard forms of bills of lading to be issued by the railroad carriers on receipt of such freight. These forms are alike save in one particular. The first is printed under the title "Straight Bill of Lading—Original—Not Negotiable," and the other under the title "Order Bill of Lading," and it contains this provision, not found in the first, and printed in larger type than the body of the instrument, viz.:

"The surrender of this original order bill of lading, properly indorsed, shall be required before delivery of the property."

The first form contains the line, "Consigned to ———," and the second the line, "Consigned to order of ———." To distinguish further between the two, the straight bill of lading is required to be printed on white paper, and the order bill of lading on yellow paper. No other forms, applicable to such shipments, were provided or in use, and these were the forms employed by the railroads in question; those issued for these shipments being the "order" bills of lading.

The bill of lading is delivered to the shipper, and in practice the initial carrier makes out a waybill which accompanies the shipment; and the waybill is all which the delivering carrier has to indicate the nature of the original bills of lading.

With the straight bills of lading, the delivering carrier, being informed by the waybill who is the consignee, needs concern itself only with the identity of the person to whom it delivers the goods; sur-

render of the bills of lading not being required. If therefore the waybill, which comes to the delivering carrier, indicates that it was a straight bill of lading which the initial carrier issued, the delivering carrier need only assure itself that the person to whom the delivery of the shipment is made is the consignee himself, or some one in his right. The waybills here in question showed the names of the shippers, L. P. Thomas in one, and Doty & Doty in the other, and in both of them the consignee is stated to be "Order of A. J. Thompson & Co., Evansville." It is claimed that these waybills did not inform the connecting carrier that the bills of lading issued were "order" bills which would require their surrender before delivery of the shipment was authorized.

Appellee's general freight agent at Evansville testified that in practice the order bill of lading was generally employed where the shipment was to the order of the shipper, and that it was very unusual to receive at that station shipments billed to the order of the consignee; that such as had been so received had at times been delivered without requiring surrender of the bills of lading; that sometimes such waybills had the further notation "do not deliver without surrender of original bill of lading." Being asked on cross-examination whether the information on these waybills was sufficient to apprise a railroad man of the nature of the bill of lading which was issued, he replied:

"Because of the peculiar manner in which this shipment was billed, I could not judge what kind of a bill of lading was issued for the shipment."

Another witness for appellees, familiar for many years on its road with handling waybills and bills of lading, testified as to waybills like those here in question, "I should say it was peculiar and unusual." A number of witnesses from other railroads, experienced in freight matters, testified that a shipment as shown by these waybills was not unusual, and would in practice be treated as though an order bill of lading had been issued for the shipment requiring surrender before delivery.

If the truth is as stated by appellees' freight agent that from these waybills one familiar with such matters could not judge whether a straight or an order bill of lading was outstanding for the shipments, it would certainly suggest that, before treating them as straight bills of lading at the risk of entailing loss on the shipper or the initial carrier, he make inquiry for the purpose of resolving the doubt according to the readily ascertainable facts. The rights of the parties here do not of necessity turn on the effect to be given to the evidence of the frequency or infrequency of such transactions, nor on the construction placed thereon by those in the habit of dealing with such matters. There is nothing in the official classification to suggest that such transactions were not contemplated. On the contrary, it would seem from the prescribed and adopted form of the order bill of lading that the person to whose order it is issued may be some one other than the shipper. If it were contemplated that in all cases it would be to shipper's order, there would have been no purpose in leaving the blank for filling in a name after the words, "Consigned to order of." The

word "shipper" or "consignor" or similar designation would likely have been in the place of the blank if it were contemplated that in all cases it would be the shipper or consignor to whose order the bills of lading would be made.

We are concerned only with the question whether, as between these two carriers, the loss which the initial carrier has had to bear was caused through its own neglect in failing to duly notify appellees that these were order bills of lading, or—what here amounts to the same—whether the delivering carrier knew or by the exercise of ordinary care ought to have known that the bills of lading for these shipments were order bills specifically prohibiting delivery of the shipments without surrender of the bills of lading properly indorsed. We are of opinion that these waybills sufficiently apprised appellees that there were outstanding against these shipments order bills of lading which should have been surrendered before delivery of the shipments.

It follows that the decree of the District Court disallowing and dismissing appellant's claim should be, and it accordingly is, reversed, and the cause remanded with direction for further proceedings on the petition in accordance with the foregoing views.